UNITED STATES of America,
Plaintiff–Appellee,

v.

CURRENCY $267,961.07, et al., Defendants,

Maggie Crumpton, Guardian of Lizzie Johnson; Lovy Johnson; Lizzie Johnson, Claimants–Appellants.

No. 89–2027.

United States Court of Appeals, Sixth Circuit.

Submitted June 7, 1990.

Decided Oct. 22, 1990.

James A. Brunson, Asst. U.S. Atty., Office of the U.S. Atty., Bay City, Mich., for plaintiff-appellee.

Gerald D. White, Gerald David White & Associates, Southfield, Mich., for appellants.

Before JONES and NELSON, Circuit Judges, and PECK, Senior Circuit Judge.

NATHANIEL R. JONES, Circuit Judge.

Lovy James Johnson and Lizzie Johnson appeal the district court's entry of a default decree and motion to strike in this *in rem* action against the Johnsons' marital property. We remand for the following reasons.

I.

On January 14, 1987, the federal Drug Enforcement Administration (DEA) and local law enforcement agents in Saginaw, Michigan executed a search warrant on the home of Lovy James Johnson and his wife, Lizzie Johnson. Police seized from that household twenty-three firearms, $267,-961.07 in United States currency and various drug paraphernalia. Lovy Johnson was arrested around the time of the search and subsequently pled guilty to conspiracy to deliver heroin. As part of a Fed.R. Crim.P. 11 plea bargain agreement, Johnson agreed to forfeit the currency and firearms seized from his residence.

Pursuant to 21 U.S.C. § 881(a)(7), the government commenced an *in rem* forfei-

ture action against the Johnsons' home, 1229 and 1233 Howard Street, Saginaw, Michigan, by filing a verified complaint on April 14, 1988 in the United States District Court for the Eastern District of Michigan.[1] Thereafter, an attorney for the Johnsons filed claims contesting the forfeiture action on behalf of Lovy Johnson and Maggie Crumpton, who purported to be the legal guardian of Lizzie Johnson. After filing an answer to the government's complaint, Maggie Crumpton moved for dismissal of the government's forfeiture action, asserting that the government had failed to plead facts with sufficient particularity to allow the claimants to respond, as required by Supplemental Admiralty and Maritime Claims Rule E(2)(a). On September 19, 1988, the district court granted Crumpton's motion to dismiss but allowed the government thirty days in which to file an amended complaint. J.App. at 49.

The government filed its amended complaint, and the claimants responded with a motion for partial summary judgment asserting that "no drugs were confiscated from said marital home made up of 1229 and 1233 Howard" and that "there is no evidence submitted by the U.S. Attorney that claimant [Mrs. Johnson] was involved or even aware of defendant's [Mr. Johnson's] [sic] activities." *Id.* at 94.[2] The district court denied the motion, holding that the government had established probable cause to support a forfeiture and that Lizzie Johnson's innocent ownership defense lacked support in the record. *Id.* at 106.

On April 21, 1989, the government deposed Maggie Crumpton. During her deposition, Crumpton revealed that she was not the legal guardian of either Lizzie or Lovy Johnson. On May 26, 1989, the government moved to strike the claim and answer of Maggie Crumpton and Lovy Johnson and for entry of a default or summary judgment. In its motion, the government asserted that Crumpton lacked an interest in the litigation because she was not the legal guardian of Lizzie Johnson and that neither Lizzie nor Lovy Johnson had filed a properly verified claim and answer as required by Supplemental Admiralty and Maritime Claims Rule C(6). At an August 23, 1989 hearing on the government's motion, counsel for Crumpton and Lovy Johnson requested that the claimants be granted leave to amend their claims. On June 5, 1989, the district court had entered a scheduling order setting July 31, 1989 as the deadline for claimants to respond to the government's motion to strike and for default. The claimants failed to file a response by this time and had not done so by the date of the hearing. For these reasons, the district court denied counsel's oral motion to amend. Because Maggie Crumpton possessed no interest in the litigation, and because neither Lovy nor Lizzie Johnson had filed a verified claim, the district court granted the government's motion to strike and for default. *Id.* at 140. This appeal followed.

## II.

### A.

We review the district court's decision to strike the claim of Maggie Crumpton and enter a default judgment against the Johnsons for abuse of discretion. *See United States v. Beechcraft Queen Airplane,* 789

---

1. 21 U.S.C. § 881(a)(7) provides:

   "The following shall be subject to forfeiture and no property right shall exist in them .... [a]ll real property, including any right, title, and interest (including leasehold interest) ... which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner."

2. In addition to seeking partial summary judgment with respect to the *in rem* forfeiture of their Howard Street marital residence, Lizzie Johnson contested the *in rem* action against the $267,961.07 in United States currency found in the Johnsons' home and a 1979 Cadillac. She disclaimed any interest in the other items named as *in rem* defendants in the government's complaint. J.App. at 104. On appeal, Lizzie Johnson contests only the forfeiture action against the Howard Street marital property.

F.2d 627, 629–30 (8th Cir.1986). The district court dismissed the claim of Maggie Crumpton because she had no legal interest in the Johnson's marital home at Howard Street and thus lacked standing to contest its forfeiture. Although the record establishes that Crumpton possessed a durable power of attorney authorizing her "[t]o assert, defend, arbitrate, compromise, acquire, dispose of or otherwise deal with any claim relating to [Lizzie Johnson's property]," *see id.* at 147, the government argues that since this power of attorney was granted after the filing of the claim on behalf of Lizzie Johnson, Crumpton lacks standing in the instant litigation.

■■■ The Supplemental Admiralty and Maritime Claims rules govern judicial forfeiture proceedings. *United States v. $38,-000.00 in U.S. Currency,* 816 F.2d 1538, 1545 (11th Cir.1987). Rule C(6) provides:

> The claimant of property that is the subject of an action in rem shall file a claim within 10 days after process has been executed, or within such additional time as may be allowed by the court, and shall serve an answer within 20 days after the filing of the claim. The claim shall be verified on oath or solemn affirmation, and shall state the interest in the property by virtue of which the claimant demands its restitution and the right to defend the action. If the claim is made on behalf of the person entitled to possession by an agent, bailee, or attorney, it shall state that the agent, bailee, or attorney is duly authorized to make the claim.

A claimant must possess Article III and statutory standing pursuant to Rule C(6) in order to contest the government's forfeiture action. 816 F.2d at 1543; *United States v. 526 Licum Dr., Dayton, Montgomery County,* 866 F.2d 213, 216–17 (6th Cir.1988); *United States v. One Gray Samsonite Suitcase, Model 200,* 637 F.Supp. 1162, 1165 (E.D.Mich.1986). With respect to Article III standing, a claimant must demonstrate a legally cognizable interest in the defendant property. A property interest less than ownership, such as a possessory interest, is sufficient to create

standing. *$38,000.00 in U.S. Currency,* 816 F.2d at 1544. Crumpton seeks to use the durable power of attorney to assert Lizzie Johnson's innocent ownership defense with respect to the Howard Street marital property.

■■■ Lizzie Johnson granted Maggie Crumpton a durable power of attorney on July 25, 1988, approximately three months after the government filed its original compalint. Although the government's original complaint was dismissed, its amended complaint, filed October 24, 1988, related back to the date of the original filing. Fed.R.Civ.P. 15(c). Thus, at the time Crumpton filed her claim on behalf of Lizzie Johnson, she lacked an interest in the marital property at Howard Street and had no Article III standing. Despite this fact, Crumpton had been appointed attorney in fact after commencement of the government's action, and her standing could have been established by amendment to her claim. The district court apparently denied oral motion to amend based on counsel's delay in requesting leave to amend. However, absent dilatory tactics, a district court should normally make a determination as to whether a party-opponent would be prejudiced by an amendment before denying a motion to amend based on the movant's delay. *Moore v. City of Paducah,* 790 F.2d 557, 561 (6th Cir.1986) (per curiam) (citation omitted). The district court did not undertake such an analysis in the instant case. The government argues, however, that even assuming Crumpton's standing, dismissal of her claim was proper in light of the lack of evidentiary support for Lizzie Johnson's innocent ownership defense.

In *United States v. Lots 12, 33, 14 and 15 Keeton Heights,* 869 F.2d 942, 947 (6th Cir.1989), this court reversed a grant of summary judgment against a claimant asserting an innocent ownership defense where the issue had been raised in her verified claim but the government had failed to demonstrate that no evidence supported the defense. Because both the district court and the government in *Lots 12, 33, 14 and 15,* failed to address the claimant's innocent ownership defense at all,

this court remanded the case. Unlike *Lots 12, 33, 14 and 15* however, the government in the instant case has proffered persuasive evidence that Lizzie Johnson's innocent ownership defense is baseless. $267,961.07 in United States currency, twenty-three firearms and various drug paraphernalia were seized from the Howard Street residence. In addition, Mr. and Mrs. Johnson's only legitimate means of support were their disability benefits.

■■■■ When Crumpton filed a motion for partial summary judgment on Lizzie Johnson's behalf asserting the innocent ownership defense, the district court found that there was probable cause to support a forfeiture. Once probable cause for forfeiture is established, the claimant bears the burden of proving innocent ownership. *United States v. One (1) Beechcraft Baron, No. N242BS*, 788 F.2d 384, 387 (6th Cir.1986). The district court concluded that there was no evidence to support Lizzie Johnson's defense. J. App. at 106. Although Crumpton's motion for partial summary judgment did not require her to negate the government's claims, she was required to show the absence of evidence supporting the government's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325, 106 S.Ct. 2548, 2552, 2553, 91 L.Ed.2d 265 (1986). The district court could have, upon compliance with Fed.R.Civ.P. 56(c), properly entered summary judgment *sua sponte* on the innocent ownership defense issue because the record revealed the absence of an issue of material fact regarding this issue. *Routman v. Automatic Data Processing, Inc.*, 873 F.2d 970, 971 (6th Cir. 1989) (citations omitted). The court instead opted to dismiss Crumpton's claim on grounds of standing. Having done so without proper analysis as to whether an amendment should be allowed, we are unable to affirm on this ground. Accordingly, we remand the matter for a determination of whether amendment would cure the standing problem and, if so, whether summary judgment is nevertheless appropriate in light of the weakness of Lizzie Johnson's innocent ownership defense.

## B.

■■■■ Notwithstanding the existence of Article III standing, a claimant's failure to strictly adhere to Supplemental Rule C(6) precludes the requisite statutory standing to contest a government forfeiture action. *$38,000.00 in U.S. Currency*, 816 F.2d at 1544; *One Gray Samsonite Suitcase*, 637 F.Supp. at 1166. The government argues that Crumpton and Lovy Johnson failed to file a claim that was "verified on oath or solemn affirmation," as required by Rule C(6). The purpose of this requirment is to prevent the danger of false claims in forfeiture proceedings by informing the court on oath or affirmation that the claimant is entitled to contest the forfeiture action by virtue of his interest in the defendant property. *United States v. United States Currency, Etc.*, 754 F.2d 208, 213 (7th Cir.1985). Courts must look to the law of the forum state to determine what constitutes verification. *United States v. U.S. Currency, The Amount of $103,387.27*, 863 F.2d 555, 559 (7th Cir. 1988). Michigan Rule of Court 2.114(A) provides in pertinent part:

> If a pleading is required or permitted to be verified, it may be verified by....
> (a) oath or affirmation of the party or of someone having knowledge of the facts pleaded; or
> (b) including the following signed and dated declaration: 'I declare that the statements above are true to the best of my information, knowledge, and belief.'

■■■■ The government correctly notes that the notarized signature of an attorney, which is all that is contained on the claims in the instant case, is insufficient to satisfy Rule C(6)'s verification requirement. *See United States Currency, The Amount of $103,387.27*, 863 F.2d at 560. However, here again, we believe the court should have made an express determination of the propriety of granting leave to amend by asking the following: "(1) whether the claimant has advised the court and government of his interest in the defendant ... before the claim deadline, and (2) whether the government would be prejudiced by

allowing the late filing." 863 F.2d at 561. When there is no dispute as to ownership, the absence of verification becomes less significant. *Id.*, at 562. As stated earlier, because Lizzie Johnson's innocent ownership defense lacks evidentiary support as far as we can tell, and because Lovy Johnson has presented no viable defense, entry of summary judgment *sua sponte* may well be appropriate. However, if the district court chooses to dispose of this matter on grounds of standing it must do so by employing the proper analysis under Fed.R. Civ.P. 15 for granting or denying a request for leave to amend. Specifically the district court should balance the claimants' reason for delay in requesting an amendment against the prejudice to the government, if any, in allowing the amendment. *Moore*, 790 F.2d at 559–61.

## III.

For the foregoing reasons, the case is REMANDED for further proceedings not inconsistent with this opinion.

DAVID A. NELSON, Circuit Judge, dissenting.

The record in this case establishes without contradiction that Lovy James Johnson ran a string of dope houses in Saginaw, and had done so for some years; that although Mr. Johnson and his wife, Lizzie Johnson, ostensibly had no reportable income, more than a quarter of a million dollars in cash was kept at their home, along with drug paraphernalia and a huge arsenal of pistols, rifles and shotguns; and that the presence within the home of the drug paraphernalia, currency and firearms was open and obvious to anyone living there.

Mrs. Johnson had repeated opportunities to file a verified claim asserting, pursuant to 21 U.S.C. § 881(a)(7), that her husband's use of the home for illicit purposes was without her knowledge or consent, but neither Mrs. Johnson nor her agent, Maggie Crumpton, ever filed such a claim. On the contrary, Mrs. Johnson filed an amended claim (which was not properly verified) as late as August 23, 1989—the very day of the hearing on the government's motion for judgment—in which she again made no assertion that Mr. Johnson's use of the property was without her knowledge or consent.

Leave to amend is to be freely given, under Rule 15(a), only "when justice so requires." Justice did not require the district court to let Mrs. Johnson further amend her claim to state, under oath, something that would have been manifestly untrue. I do not believe that the district court abused its discretion in declining to allow a further amendment, and I would therefore affirm the judgment.